UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN LITTLEFIELD,

                   Plaintiff,

     -vs-                                    09-CV-455-JTC

AUTOTRADER.COM,

                   Defendant .
_____

APPEARANCES:        SANDERS & SANDERS (HARVEY P. SANDERS, ESQ., Of Counsel), Cheektowaga, New York, Attorneys for Plaintiff.

                             BOND, SCHOENECK & KING, PLLC (ROBERT A. LABERGE, ESQ., Of Counsel), Syracuse, New York, Attorneys for Defendant.

By order of United States District Judge Richard J. Arcara dated June 28, 2011 (Item 21), this matter has been reassigned to the undersigned for all further proceedings.

In this action, plaintiff John Littlefield seeks declaratory relief and damages against defendant AutoTrader.com ("AutoTrader") for employment discrimination on the basis of his gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* ("Title VII"), and the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq*. ("NYSHRL"). Defendant has moved for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons that follow, defendant's motion is granted.

## BACKGROUND

AutoTrader is in the internet automobile advertising business and operates a consumer website that aggregates information concerning classified listings from

dealerships and private owners nationwide.  Plaintiff began working for AutoTrader in late August 2007 as an advertising consultant in the Buffalo, New York area.  He was interviewed and selected for the position by Mario Rector, defendant's Upstate New York District Sales Manager (*see* Item 1, ¶ 8; Item13-9, Ex. A).

In mid-October, 2007, Mr. Rector organized and managed a week-long concentrated sales effort, referred to by defendant as a "Sales Blitz," to increase business and revenues in the Rochester, New York area.  Mr. Rector assigned four AutoTrader employees from the Upstate New York District and four additional employees from other areas to work together in two-person teams.  Plaintiff was assigned to work with Robin Long, an advertising consultant who at the time worked for defendant in the Mid-Atlantic Region, headquartered in Norfolk, Virginia.

On the evening of October 16, 2007, Ms. Long reported to Mr. Rector that, during the two days she was teamed with plaintiff on the Rochester Sales Blitz (October 15 and 16), plaintiff had made a number of  inappropriate remarks to her which she regarded as offensive.  Specifically, Ms. Long reported that plaintiff suggested to her they could get more deals if she undid another button on her blouse; plaintiff stated that he thought "all of the girls on the Sales Blitz team were cute," and that he believed this was how they got to be on the Sales Blitz team; and, while they were driving past an adult entertainment club, plaintiff told Ms. Long that he thought she would make a "good stripper."  (Item 13-9, ¶¶ 9-10; Item 13-11, ¶¶ 6-7).  Ms. Long also reported to Mr. Rector that plaintiff made similar comments about her while they were talking on speakerphone to two other AutoTrader employees assigned to the Rochester Sales Blitz, Eric Fuller and Kitty Lemacks (Item 13-11, ¶ 6).

That same evening, Mr. Rector spoke with both Mr. Fuller and Ms. Lemacks, who confirmed that they heard plaintiff make inappropriate comments about Ms. Long during their conversation over the speakerphone.  Mr. Rector next spoke with Patrick Svoboda, AutoTrader's Regional Sales Manager, and Lloyd Hecht, AutoTrader's Northeast Director, to discuss these developments.  They agreed that plaintiff's conduct, as confirmed by three co-workers, was inappropriate and justified termination of his employment under AutoTrader's published equal opportunity and anti-harassment policies.  Mr. Rector then contacted plaintiff and advised him that Ms. Long had complained about his comments, and that he should not return to work the following day but instead should contact AutoTrader's Human Resources Manager John Cato  (Item 13-9, ¶¶ 12-16).

Mr. Cato spent most of the next day, October 17, 2007, investigating the circumstances of Ms. Long's complaint.  Mr. Cato spoke with plaintiff, Mr. Rector, Ms. Long, Mr. Fuller, and Ms. Lemacks.  He also reviewed emails from Mr. Rector regarding the incident involving Ms. Long, as well as a prior incident involving another female AutoTrader employee, Elizabeth DiPasquale, who had complained about inappropriate comments made by plaintiff in September 2007, soon after he began working for defendant.  Based upon his investigation, Mr. Cato concluded that plaintiff had in fact made unwelcome, unsolicited, and sexually inappropriate remarks to Ms. Long on October 15 and 16, 2007, and that there was no reason to change the determination made by Mr. Rector, Mr. Svoboda, and Mr. Hecht that plaintiff's employment should be terminated.  Mr. Cato contacted plaintiff and advised him of this decision.  Plaintiff's employment was terminated on October 17, 2007, less than two months after he began working for AutoTrader (*see* Item 13-8, ¶¶ 9-24 & Exs. B, C).

Plaintiff filed this action on May 12, 2009,[1] alleging that defendant intentionally discriminated against him by subjecting him to discriminatory terms and conditions of employment, including differential treatment, harassment, and termination based on his sex. He alleges that while he was attending job training sessions in Andover, Massachusetts, he was subjected to unwelcome comments, physical touching by female employees, and displays of photos and video clips of a sexual nature, all in the presence of AutoTrader employees and management personnel, but no disciplinary action was taken (*see* Item 1, ¶¶ 9-13). He also alleges that it was Ms. Long (not plaintiff) who made inappropriate comments about the adult entertainment club; that she talked about "wild" pictures of herself and her friends, and about the way she used her voice and clothing in a suggestive manner to facilitate sales; and that she spent a significant portion of the day engaged in non-work-related telephone conversations with a male friend, all without disciplinary action (*id.* at ¶¶ 14-15). Plaintiff claims that by terminating his employment without taking any disciplinary action against Ms. Long or any other female employee, defendant discriminated against him on the basis of sex, in violation of Title VII and the NYSHRL.

Defendant moves for summary judgment dismissing the complaint on the ground that plaintiff can neither establish a *prima facie* case of gender discrimination nor prove that AutoTrader's stated reasons for terminating his employment were a pretext for unlawful

---

[1] In his complaint, plaintiff alleges that he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and obtained a Notice of Right to Sue letter upon request (Item 1, ¶ 5). Defendant admits this allegation in its answer (Item 2, ¶ 5). Plaintiff also indicates in his complaint that the EEOC charge and Notice of Right to Sue were submitted with the complaint as Exhibits 1 and 2, respectively, but the court's review of the docket reflects that no such documents have been electronically filed either as exhibits to the pleadings or in connection with the materials submitted on summary judgment.

discrimination, under the standards governing claims brought pursuant to Title VII and the NYSHRL.

## DISCUSSION

I.      **Summary Judgment**

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Hamilton Bank, N.A. v. Kookmin Bank*, 245 F.3d 82, 89 (2d Cir. 2001).

In reaching a summary judgment determination, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Aetna Cas. and Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 574 (2d Cir. 2005). The moving party bears the initial burden of establishing that there are no genuine issues of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). That burden may be satisfied by pointing out the absence of evidence to support the non-movant's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once this initial showing is made, the non-moving party may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *Anderson*, 477 U.S. at 256; *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996). Mere conclusory allegations are insufficient, and "[t]here must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as

to the material facts'" to defeat a motion for summary judgment. *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252, and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), *cert. denied*, 500 U.S. 928 (1991).

The trial court's function at the summary judgment stage "is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Svc, Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *see also Keystone Mfg Co. v. Jaccard Corp.*, 394 F. Supp. 2d 543, 549 (W.D.N.Y. 2005). "In examining the record it must be kept in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute." *Gallo*, 22 F.2d at 1224 (citing *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)).

In discrimination cases, courts must exercise "an extra measure of caution" in determining whether to grant summary judgment "because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence . . . ." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact . . . ." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997), *quoted in Holtz*, 258 F.3d at 69; *see also Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006). The ultimate test for summary judgment in an employment discrimination case, as in any other case, "is whether the evidence can

reasonably support a verdict in plaintiff's favor." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir.2000); *see also Karim v. Dep't of Educ. of the City of New York*, 2011 WL 809568, at *4 (E.D.N.Y. Mar. 2, 2011).

II.     **Title VII**

Title VII provides that it is an "unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Courts analyze employment discrimination claims brought under Title VII by using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).  First, the plaintiff must establish a *prima facie* case of discrimination by demonstrating that: "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination."  *Ruiz v. County of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010).  While this burden has often been characterized as "minimal" or "*de minimis*," *see, e.g., Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) (citing cases), courts have not hesitated to grant summary judgment in favor of the employer where the plaintiff offered no evidence to suggest that the discharge occurred under circumstances giving rise to an inference of discrimination.  *See, e.g., Kazukiewicz v. Kaleida Health*, 2010 WL 2998671, at *4 (W.D.N.Y. July 26, 2010) (citing *Rodriguez v. Pierre New York*, 299 F. Supp. 2d 214, 218

-7-

(S.D.N.Y. 2004), *aff'd sub nom. Rodriguez v. Human Resources Director*, 144 Fed. Appx. 197 (2d Cir. 2005)).

If the plaintiff succeeds in satisfying this initial burden, then "a presumption of discrimination arises and the burden shifts to the defendant, who must proffer some legitimate, nondiscriminatory reason for the adverse action." *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010).

> The burden that shifts to the defendant . . . is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons.   It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.

*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

If the defendant produces evidence of a legitimate, nondiscriminatory reason for the adverse employment action, "the presumption of discrimination created by the *prima facie* case drops out of the analysis, and the defendant 'will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination.'"  *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 767 (2d Cir. 2002) (quoting *James*, 233 F.3d at 154).   The burden therefore shifts back to the plaintiff to give him "the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" Burdine, 450 U.s. at 253; *see also* Reeves *v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Although the analytical framework is articulated, and applied, in terms of  "shifting" burdens, "'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times

with the plaintiff.'" *Burdine*, 450 U.S. at 253, quoted in *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 499 (2d Cir. 2009).

In this case, defendant contends that plaintiff cannot meet either his initial burden to establish a *prima facie* case of gender discrimination, or his ultimate burden to prove by a preponderance of the evidence that defendant's reason for terminating his employment was a pretext for discrimination.  With respect to his *prima facie* case, it is essentially undisputed that plaintiff is subject to the protections of Title VII, was qualified for the position of advertising consultant, and was terminated from that position.  Therefore, defendant's argument is focused on the fourth prong of the *prima facie* inquiry–*i.e.*, whether plaintiff has come forward with "minimal" evidence to suggest that the termination occurred under circumstances giving rise to an inference of discrimination.

In this regard, courts within the Second Circuit have held that a plaintiff may raise an inference of discrimination to satisfy this prong of the *prima facie* inquiry "by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group."  *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000), *quoted in Bryant v. Delphi Auto. Sys. Corp.*, 2010 WL 1063740, at *4 (W.D.N.Y. Mar. 22, 2010).  The standard for comparing employees' conduct "requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than showing that both cases are identical."  *Graham*, 230 F.3d at 40.  Thus, in order to establish an inference of discriminatory treatment at the *prima facie* stage, the plaintiff must show that he was treated differently than a "comparator" who

was "similarly situated in all material respects." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997); *see also Ruiz*, 609 F.3d at 494.

Here, plaintiff argues that Ms. Long, along with other unidentified similarly situated female employees who attended the same job training session in Andover, engaged in sexually inappropriate behavior toward plaintiff, yet defendant did not discipline those employees or even investigate their behavior–and in Ms. Long's case, instead simply credited her version of the events of October 15 and 16, 2007, while discrediting plaintiff's version.  According to plaintiff, this demonstrates that defendant's investigation of the circumstances leading up to his termination was "tainted" from the outset by "negative animus towards male employees" (Item 18, p. 8), thus giving rise to an inference of discrimination sufficient to satisfy the fourth prong of the Title VII *prima facie* inquiry.

This argument must be rejected, for several reasons.  First and foremost, it is undisputed that plaintiff never made any complaint or otherwise raised his concerns with management regarding sexually inappropriate behavior on the part of Ms. Long or any other female AutoTrader employee at any time during the course of his employment (*see* Item 13-2 (Deft. Local R. 56 Statement), ¶ 6; Item 13-4 (Pltff. Dep.), pp. 54-55).  Several courts have held that a plaintiff cannot show that he was treated differently than a comparator who was "similarly situated in all material respects" in the absence of evidence that the employer was made aware of the comparator's conduct by way of a specific complaint, yet treated the comparator more favorably than plaintiff.

For example, in *Yeager v. City Water and Light Plant of Jonesboro, Ark.*, 454 F.3d 932 (8th Cir. 2006), the plaintiff was forced to resign after admitting to a single instance of inappropriate touching of a female co-worker, in violation of the company's sexual

harassment policy.  He sued for "reverse" gender discrimination, arguing on summary judgment that the co-worker was similarly situated because she "openly and frequently" engaged in similar conduct in violation of defendant's harassment policy, but was never reprimanded.  *Id.* at 933.  The district court rejected this argument, finding that the accusations about the comparator (which she denied) were not made contemporaneous with her conduct, but rather were first brought to the employer's attention by employees protesting the plaintiff's discharge.  *Id.* at 934.  In affirming the trial court's dismissal of the gender discrimination claim, the Eighth Circuit explained:

> An employer that promulgates a sex harassment policy may reasonably distinguish between sexually oriented conduct that elicits a complaint from an offended co-worker, and arguably comparable conduct that is nonetheless tolerated by co-workers without complaint.  Thus, both the absence of contemporaneous complaints against [the female co-worker] and the fact that [the plaintiff] admitted his misconduct, justified [the employer] in treating these two employees as not similarly situated from the standpoint of compliance with its sex harassment policy.

*Id.* (citing *Morrow v. Wal-Mart Stores*, 152 F.3d 559, 562-63 (7th Cir. 1998)).

In *Morrow*, the Seventh Circuit rejected a similar argument made by two male Wal-Mart employees who sued the company for gender discrimination after each was fired for once violating the company's sexual harassment policy.  The plaintiffs argued that several similarly situated female employees "often made crude comments with sexual connotations" to other employees, but were never disciplined by the employer.  *Morrow*, 152 F.3d at 562. The court determined that because no complaint against any of those employees was ever lodged with management, the plaintiffs could not demonstrate the existence of a genuine issue of material fact regarding their contention that Wal-Mart

treated similarly situated female employees more leniently.  *Id.* at 564.  According to the

Seventh Circuit:

> Wal-Mart's quick decision to terminate the plaintiffs may seem unfair in a
> work environment that appears rife with similarly off-color conduct.  We have
> noted time and again, however, that we do not sit as a super-personnel
> department that reexamines an entity's business decisions.   Title VII
> prohibits discriminatory employment actions, not hasty or ill-considered ones.
> Although some of Wal-Mart's female employees seem to have engaged in
> questionable behavior, there is no evidence that any of this behavior sparked
> complaints of harassment like those that Wal-Mart received concerning [the
> plaintiffs].   Without evidence of similar employee complaints, Wal-Mart
> cannot be faulted for failing to respond to these incidents in the same way
> that it responded to [the plaintiffs'] situations.

*Id.* (internal quotation marks and citation omitted); *see also Ruiz*, 609 F.3d at 494-95 (2d

Cir. 2010) (plaintiff failed to raise an inference of discrimination in the absence of proof that

similarly situated employees faced equally serious allegations and were allowed to remain

on the job); *Dinkins v. Suffolk Transp. Serv., Inc.*, 2010 WL 2816624, at *10 (E.D.N.Y. July

15, 2010) ("An employee who allegedly engaged in misconduct comparable to the plaintiff's

is not similarly situated to the plaintiff when the employer is unaware of what the

comparator employee supposedly did.") (citing cases from the 5th, 7th, 8th and 11th Circuits).

The undisputed record in this case is clear that neither plaintiff nor any other

AutoTrader employee complained to management about sexually inappropriate comments

or conduct on the part of Ms. Long or any of the female employees who attended the same

job training session as plaintiff.  In the absence of proof that defendant was presented with

a complaint or was otherwise made aware  of comparable conduct on the part of a female

employee, and treated the female employee more favorably than it treated plaintiff, no

reasonable jury could find that plaintiff was subjected to disparate treatment by AutoTrader

to the benefit of a comparator who was similarly situated in all material respects.

Plaintiff also attempts to raise an inference of discrimination by challenging the sufficiency of defendant's investigation into the circumstances leading to his termination. However, as the Second Circuit recently reaffirmed, "it is not the role of federal courts to review the correctness of employment decisions or the processes by which those decisions are made."  *Sassaman v. Gamache*, 566 F.3d 307, 314 (2d Cir. 2009); *see also McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) ("In a discrimination case . . . we are decidedly not interested in the truth of the allegations against plaintiff.  We are interested in what motivated the employer."), *quoted in Duviella v. JetBlue Airways*, 353 Fed. Appx. 476, 477 (2d Cir. 2009).  Indeed, the federal courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision."  *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002), *quoted in Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002).

In addition, as this court recently explained in *Kazukiewicz*, employment discrimination case law recognizes that when the same employer hires a person within the protected class, and then fires that same person within a relatively short time, a "strong inference" arises that discrimination was not a motivating factor in the employment decision. *Kazukiewicz*, 2010 WL 2998671, at *5  (quoting *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 137 (2d Cir.), *cert. denied*, 530 U.S. 1261 (2000).  In *Kazukiewicz*, the court found that the same actor who was responsible for hiring the plaintiff also discharged him three and a half months later, giving rise to a strong inference of nondiscriminatory motivation, and that "[t]o avoid summary judgment at the *prima facie* stage, plaintiff must

-13-

come forward with at least some showing of proof to support 'the strong case of bias necessary to overcome this inference.'" *Id.* (quoting *Coghlan v. American Seafoods Co.*, 413 F.3d 1090, 1098 (9th Cir. 2005)).

In this case, the record before the court is clear that the same person–Mr. Rector–hired plaintiff in late August 2007, and made the decision to terminate plaintiff's employment less than two months later, in mid-October 2007.  Beyond his unsupported claim that the decision must have been based upon gender because no disciplinary action was taken against Ms. Long or any other similarly situated female employee, plaintiff has come forward with no evidence whatsoever to overcome the "especially strong" inference in this case "that the employment action was not motivated by discriminatory animus." *Kazukiewicz*, 2010 WL 2998671, at *5; *see also Velez v. SES Operating Corp.*, 2009 WL 3817461, at *10 (S.D.N.Y. Nov.12, 2009) ("[W]here fewer than three months had elapsed since plaintiff was hired, the same actor inference is a 'highly relevant' factor in the Court's [*prima facie*] inquiry.").

Based upon this analysis, the court finds that plaintiff has failed to come forward with any admissible evidence to suggest that the termination of his employment occurred under circumstances giving rise to an inference of discrimination.  Because plaintiff cannot satisfy this essential element of his *prima facie* case, no reasonable jury could find in his favor on his claims of gender discrimination brought under Title VII and the NYSHRL.[2]

---

[2]Gender discrimination claims brought under the NYSHRL are analyzed under the same standards applicable to claims brought under Title VII.  *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n.1 (2d Cir. 2000); *Foster v. Humane Soc'y of Rochester and Monroe County, Inc.*, 724 F. Supp. 2d 382, 397 (W.D.N.Y. 2010).

Accordingly, defendant is entitled to summary judgment as a matter of law dismissing the complaint in its entirety.

## **CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment (Item 13) is granted, and the case is dismissed.  The Clerk of the Court is directed to enter judgment in favor of defendant.

So ordered.

\s\ John T. Curtin
_____
JOHN T. CURTIN
United States District Judge

Dated:  July 7    , 2011
p:\pending\2009\09-455.may27.2011